UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

April Lynne Hartford,
      Claimant

      v.                                Case No. 17-cv-467-SM
                                        Opinion No. 2018 DNH 058

Nancy A. Berryhill, Acting Commissioner,
Social Security Administration,
      Defendant


**O R D E R**


Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, April Hartford, moves to reverse or vacate the Acting Commissioner's decision denying her applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income Benefits under Title XVI. See 42 U.S.C. §§ 423, 1381-1383c (collectively, the "Act"). The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is denied, and the Acting Commissioner's motion is granted.

**Factual Background**

I.  Procedural History.

In January of 2015, claimant filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that she was disabled and had been unable to work since July 15, 2008. She subsequently amended her alleged onset of disability to March 15, 2012. Admin. Rec. at 293. Claimant was 33 years old at the time and had acquired sufficient quarters of coverage to remain insured through March of 2012. Claimant's applications were denied and she requested a hearing before an Administrative Law Judge ("ALJ").

In June of 2016, claimant, her attorney, and an impartial vocational expert appeared before an ALJ, who considered claimant's applications de novo. In July of 2016, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time from her alleged onset date through the date of the ALJ's decision. Claimant then requested review by the Appeals Council. That request was denied. Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion for Order Reversing the Decision of the Commissioner" (document no. 7). In response, the Acting Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 8). Those motions are pending.

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a joint statement of stipulated facts which, because it is part of the court's record (document no. 9), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Importantly, it is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II. The Parties' Respective Burdens.

An individual seeking SSI and/or DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places the initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her

4

former type of work.  See Manso-Pizarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996); Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985).  If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform, in light of her age, education, and prior work experience.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512, 404.1560, 416.912, and 416.960.

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

5

>           exists in the immediate area in which [she] lives, or
>           whether a specific job vacancy exists for [her], or
>           whether [she] would be hired if [she] applied for
>           work.

42 U.S.C. § 423(d)(2)(A). See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.

## Background - The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since her alleged onset of disability: March 15, 2012. Admin. Rec. at 21. Next, he concluded that claimant suffers from the following severe impairments: "obsessive/compulsive disorder, post-traumatic stress disorder, personality disorder and panic/anxiety disorder." Id. at 22. But, the ALJ determined that those impairments, whether considered alone or in combination, did not meet or medically equal one of the

impairments listed in Part 404, Subpart P, Appendix 1.  Admin. Rec. at 22-23.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of "the full range of work at all exertional levels," id. at 23, subject to the following non-exertional limitations: claimant's "ability to understand, remember and carry out instructions is limited to simple routine tasks, she can frequently interact with supervisors, can occasionally interact with co-workers and the public, and can tolerate only a few routine changes in a work setting."  Id.  In light of those restrictions, the ALJ concluded that claimant was not capable of performing her past relevant work as either a personal care attendant or a licensed nursing assistant.  Id. at 27.  See also Id. at 71-72 (vocational expert's testimony about claimant's work history).

At the final step of the analysis, the ALJ considered whether there were any jobs in the national economy that claimant might perform.  Relying upon the testimony of the vocational expert, the ALJ concluded that, notwithstanding claimant's non-exertional limitations, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Id. at 27.  Consequently, the ALJ

7

concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision.

**Discussion**

Claimant challenges the ALJ's decision on grounds that he erred by giving insufficient weight to the opinions of Heidi Crusberg, M.D. and Amanda Wood-Friend, APRN - two of claimant's primary care providers. Before turning to the merits of claimant's assertions, it is, perhaps, appropriate to recite a brief summary of the medical evidence of record.

I. <u>Medical Opinions</u>.

In April of 2015, Dr. Edward Martin, a state agency psychologist, reviewed claimant's medical records and opined that her mental impairments were not severe. Specifically, he stated his belief that claimant had only a mild limitation in her ability to do daily activities, function socially, and maintain concentration, persistence, or pace. Admin. Rec. at 201. Dr. Martin also noted that claimant had suffered no episodes of decompensation.

Also in April of 2015, Carolynne Shinn, RN, completed an "APTD Medical Eligibility Review Summary" in connection with claimant's application for Medicaid benefits. She reported that

claimant likely suffered from bipolar syndrome, but that
claimant reported subjective improvement on medication.
Nevertheless, she noted that claimant continued to report being
easily overwhelmed, with difficulty concentrating. Admin. Rec.
at 555. Nurse Shinn also reported that claimant suffered from
recurrent severe panic attacks, and recurrent obsessions or
compulsions which are a source of marked distress. Id. at 556.
With respect to claimant's personality disorder, Ms. Shinn
reported that claimant has "significant difficulty expressing
herself effectively and resolving conflict. . . . has poor
boundaries and difficulty being assertive [and] difficulty
controlling her anger [and] difficulty adapting to change and
becomes dysregulated with any increased stressors." Id. at 558.
Ms. Shinn opined that claimant suffers from "moderate"
restriction in her activities of daily living; "moderate"
difficulty maintaining concentration, persistence, or pace; and
"marked" difficulty in maintaining social functioning. Id. at
560-61.

    Dr. Herb Crosby, Ph.D., reviewed Ms. Shinn's conclusions
and endorsed them. Id. at 564. He added the following:

> As the MRT Nurse Reviewer summarized on the MERS, Ms.
> Hartford's combination of impairments is severe and
> she has marked limitations in the "Social functioning"
> domain despite her interpersonal strengths (a mother,

9

>     a partner). Progress is already evident in treatment
>     notes. Similarly with the domain of "ADL's" symptoms
>     at times interfere with self-care and community
>     functioning and there is documented improvement with
>     medications. In addition, symptoms interfere with
>     "Concentration, persistence or pace" despite linear,
>     clear thinking and memory functions. Felt progress
>     has been reported and it appears to be relative to
>     significant past levels of severity, leaving Ms.
>     Hartford able to cope, as she was quoted, "tolerating
>     the stresses and strains of her-life well." Although
>     symptoms are better managed, her ability to cope with
>     interactions with others, with expected attendance,
>     and with changes and stressors in a workplace remains
>     impaired. With continued treatment, these persisting
>     limitations will lessen.

Admin. Rec. at 564.

In March of 2016, Paul Maguire, M.D., one of claimant's treating sources, completed a "Mental Impairment Questionnaire" in which he opined (consistent with the ALJ's findings) that claimant suffers from obsessive compulsive disorder, post-traumatic stress disorder, and a borderline personality disorder. Among other things, he opined that claimant suffered from a "slight" impairment in her ability to perform activities of daily living; "moderate" deficiencies in concentration persistence, or pace; "marked" difficulties in maintaining social functioning; and experienced three or more episodes of deterioration or decompensation in work or work-like settings (it is, however, unclear which episodes he is referring to). Admin. Rec. at 603-04. He also opined that, on average,

claimant would likely be absent from work more than three times each month as a consequence of her mental impairments, in particular her "severe interpersonal anxiety and avoidance." Id. at 603. Finally, he opined that claimant had been similarly impaired since September of 2012 (five months after claimant's date last insured). Id. at 606.

Even viewing that evidence in the light most favorable to claimant, at best one might conclude that she suffers from a "moderate" restriction in her activities of daily living; "moderate" difficulty maintaining concentration, persistence, or pace, and "marked" difficulty in maintaining social functioning. And, despite Dr. Maguire's suggestion to the contrary, the record does not contain evidence of repeated episodes of decompensation of extended duration. Consequently, the evidence recounted above supports the ALJ's conclusion that claimant does not meet the "paragraph B" criteria for a disabling mental impairment as described in listings 12.04 ("Depressive, bipolar and related disorders"), 12.06 ("Anxiety and obsessive-compulsive disorders"), or 12.08 ("Personality and impulse-control disorders"). 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A2. See Admin. Rec. at 22-23.

There is, however, opinion evidence suggesting that claimant is more severely impacted by her non-exertional limitations. In two "Psychological Capacities" reports (dated April 25, 2011, and September 22, 2011 - both of which were completed <u>prior</u> to claimant's alleged onset of disability), Amanda Wood-Friend, APRN, assessed claimant's abilities in a range of areas. In those reports, Nurse Wood-Friend documented what she perceived to be a fairly sharp decline in claimant's ability to interact appropriately with others, to maintain socially appropriate behavior, to maintain attention for extended periods, to sustain a routine without frequent supervision, and to perform at a consistent pace. Admin. Rec. at 710-11. But, the opinions Nurse Wood-Friend expressed in those forms are not consistent with her office notes documenting her various encounters with claimant. Representative observations in those notes include the following: "Mood and affect: no depression, anxiety, or agitation," <u>id</u>. at 441; "patient reports doing well on current medication. Denies worsening anxiety or depression. Denies thoughts of self harm or suicidal ideations. Denies any medication side effects or intolerance to current medication," <u>id</u>. at 436; and "patient denies anxiety, suicidal ideation, depression," <u>id</u>. at 393.

In November of 2014, claimant transitioned her primary care from Nurse Wood-Friend to Heidi Crusberg, M.D. See Id. at 386. Notes from Dr. Crusberg's initial meeting with claimant reference claimant's mental status only briefly, noting: "Bipolar disorder: feels control is ok on current meds." Id. at 387. Dr. Crusberg reported that, during that meeting with claimant, she observed "no depression, anxiety, or agitation." Id. About a month after that initial appointment, claimant returned to Dr. Crusberg's office a second time, to "discuss paperwork" related to claimant's applications for disability benefits. And, with regard to claimant's mental impairments, Dr. Crusberg wrote:

> BIPOLAR DISORDER. [S]he is out of work due to [continued] severe bipolar and OCD and PTSD - she is engaging in treatment with a good plan - counselling, classes and psych meds. Unfortunately she had these [symptoms] for years and were sub-optimally [treated], so pattern of anxiety and mood dysregulation is well-established. She has a long road ahead of her but at least is on the right track. Due to mood dysregulation it is difficult for her to interact with people, so will remain out of work and I can sign forms pertaining to disability.

Admin. Rec. at 385. Dr. Crusberg then completed a "Psychological Capacities" form, on which she checked a series of boxes indicating that claimant has "marked" limitations in the following areas: interacts appropriately with others, maintains socially acceptable behavior, maintains attention for

13

extended periods, sustains routine without frequent supervision, and performs at a consistent pace.  Id. at 713.  But, based upon Dr. Crusberg's office notes, the precise bases for her opinions are not entirely clear (other than, of course, her review of claimant's medications and her brief discussion with claimant about her symptoms).

Indeed, Dr. Crusberg's notes from claimant's next office visit (in May of 2015), while acknowledging claimant's reports of a history of disabling anxiety, suggest that claimant's condition had substantially improved - to the point that she felt no need to fill her prescription for Lamictal.  See Admin. Rec. at 570 ("Patient states that things are well.  She is now taking 20mg Prozac.  No concerns today.  Medications verified as current and accurate by patient.  Needs disability forms filled out for herself.  Last year her anxiety was so bad that she was crying all the time and having trouble getting out of bed.  She feels that she is able to function as a mother better now.  But not ready to go back to work on regular basis.  She is still working through some real issues - like past history of abuse.  And her anxiety can still feel raw.  Currently just taking Prozac - never filled Lamictal and has responded well to counselling.").  See also Id. at 573 ("Mental status exam.  Mood and affect: no depression, anxiety, or agitation.").

II. The ALJ's Decision.

As noted above, claimant faults the ALJ for affording "little weight" to the opinions of Dr. Crusberg and for failing to acknowledge the opinions of Nurse Wood-Friend. With regard to Dr. Crusberg (claimant's treating physician since about six months after her alleged onset of disability), the ALJ supportably concluded that:

> Dr. Crusberg's, MD, opinion for marked limitation of social functioning and sustained concentration and maintenance of routines (Exhibit B6F) is not supported by medical evidence to [the] contrary documented in the therapy progress notes of treating source Dr. Maguire, MD (B10F), discussed in this decision. Dr. Crusberg, MD, provided no mental health treatment to the claimant as did Dr. Maguire, MD, and her own treatment notes (Exhibits B2F & B5F) do not reflect those limitations, which appear[] to be based upon the claimant's self-report of symptoms (Exhibit 5B-3), that are not supported by objective clinical findings consisting of normal mental status examination, including intact judgment and memory (Exhibit B5F-9).

Admin. Rec. at 26. In short, the boxes Dr. Crusberg checked when completing the "Psychological Capacities" form are inconsistent with (and far more limiting) than her own notes documenting her interactions with, and observations of, claimant (as reported in her treatment notes). Under those circumstances, a treating source's opinions are not entitled to controlling weight. See 20 C.F.R. § 404.1527(c)(2) (to be entitled to controlling weight, a treating source's opinions

15

must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [cannot be] inconsistent with the other substantial evidence in [the] case record."). Moreover, the ALJ gave an adequate explanation for his decision to discount those opinions offered by Dr. Crusberg. See generally Social Security Ruling, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, SSR 96-2p, 1996 WL 374188 (July 2, 1996) (when the ALJ renders an adverse disability decision, his or her notice of decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight.").

Likewise, the opinions of Nurse Wood-Friend, as expressed in the "Psychological Capacities" form she completed, are more extreme than suggested by her office treatment notes. See, e.g., Admin. Rec. at 393, 396, 399, 402-03, 406, 412, 416, 420, 423, 436, 441. Additionally, Nurse Wood-Friend prepared those two reports prior to claimant's alleged onset of disability. While not entirely irrelevant, opinions that predate a claimant's alleged onset of disability are of limited relevance.

See, e.g., Gaudreault v. Astrue, No. 11-cv-73-JL, 2012 WL 2277907 at *7, 2012 DNH 108 (D.N.H. June 18, 2012). That is particularly true in this case, where those earlier opinions actually suggest greater limitations than are supported by the medical evidence of record post-dating claimant's alleged onset of disability (implying some progress in the treatment of claimant's symptoms). Furthermore, as the Acting Commissioner notes, Nurse Wood-Friend opined that claimant's disabling limitations were expected to last only six months, Admin. Rec. at 710-11 - less than the 12-month period required to establish disability. See 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3).

**Conclusion**

There is no doubt that claimant is substantially affected by her mental impairments. The letter from her mother (which was prepared and entered into the record after the ALJ issued his unfavorable decision) is particularly compelling. Admin. Rec. at 13-14. But, judicial review of the ALJ's decision is both limited and highly deferential. This court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether she is disabled under the Act. Consequently, the issue before the court is not whether it believes claimant is disabled. Rather, the permissible inquiry is "limited to determining whether the ALJ

deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly supported by substantial evidence - as they are in this case - the court must sustain those findings <u>even when there may also be substantial evidence supporting the contrary position</u>. Such is the nature of judicial review of disability benefit determinations. See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Acting Commissioner and claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not "disabled," as that term is used in the Act, at any time prior to the date of the ALJ's decision (July 13, 2016). The ALJ's assessment of the proper amount of weight to afford the opinions

of Dr. Crusberg and Nurse Wood-Friend, as well as his RFC determination, are well-reasoned and adequately supported by substantial documentary evidence.

For the foregoing reasons, as well as those set forth in the Acting Commissioner's legal memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 7) is denied, and the Acting Commissioner's motion to affirm her decision (document no. 8) is granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 19, 2018

cc: Christopher G. Roundy, Esq.
    Terry L. Ollila, AUSA